IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


LETISHA TWIGG and
GLENDA FLANAGAN,

       Plaintiffs,

v.                                        Civil Action: 3:05-CV-40

PILGRIM'S PRIDE CORPORATION,

       Defendants.


**<u>MEMORANDUM, OPINION, AND ORDER GRANTING IN PART AND DENYING IN
PART REASONABLE EXPENSES TO PLAINTIFFS, DENYING SANCTIONS, AND
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
RECONSIDER</u>**

On January 19, 2007, came the above named Plaintiffs, by Garry Geffert for Plaintiff

Letisha Twigg, by telephone, and Robert Schiavoni for Plaintiff Glenda Flanagan, by telephone,

and the above named Defendant, by Thomas Ullrich, in person.  Also present by telephone were

Joe Ylitalo and Shawn Morgan, who are in house counsel for Defendant.  Testimony was not

taken, and no other evidence was introduced.

<u>I. Introduction</u>

A.      <u>Background</u>.

Plaintiffs allege they were employees of Defendant and Defendant terminated their

employment because they missed work due to serious medical conditions.  Both Plaintiffs bring

claims under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 <u>et seq</u>.  Plaintiffs

make separate individual state law claims.  The parties engaged in discovery and a dispute arose.

Plaintiff Letisha Twigg (hereinafter Twigg) filed two motions to compel on November 16, 2006.[1]

Defendant filed a response to these two motions on November 27, 2006.[2]  Twigg filed replies on

December 6, 2006.[3]  Plaintiff Glenda Flanagan (hereinafter Flanagan) filed a motion to compel

on December 7, 2006.[4]  Defendant filed a response on December 21, 2006.[5]  On December 15,

2006, this Court set an evidentiary hearing and argument regarding all three motions for

December 27, 2006.[6]  The hearing was held on that date.[7]  At the hearing, the Court orally

pronounced a ruling on all three motions.  The Court entered an Order containing the substance

of that decision on December 29, 2006.[8]  The Order confirmed the Court granted both of

Twigg's motions and granted in part and denied in part Flanagan's motion.  The Order also set n

evidentiary hearing and argument for January 27, 2007, regarding whether reasonable expenses

and sanctions should be awarded to Plaintiffs against Defendant.  Defendant filed a Motion to

Reconsider on January 12, 2007.[9]  Plaintiffs both filed briefs in support of why they should

receive reasonable expenses on January 16, 2007.[10]  Defendant filed a brief in opposition to

---

[1] Docket Nos. 89, 91

[2] Docket No. 93

[3] Docket Nos. 95, 96

[4] Docket No. 97

[5] Docket No. 110

[6] Docket No. 102

[7] Docket No. 111

[8] Docket No. 112

[9] Docket No. 128

[10] Docket Nos. 140, 143

expenses and sanctions that same day.[11]  The hearing was held as scheduled.[12]

B.      The Motions.

        Both Twigg and Flanagan filed their requests for reasonable expenses in response to the

Court's December 29, 2006 Order.  The Court also takes this opportunity to consider

Defendant's Motion to Reconsider the Court's December 29, 2006 Order.  Since the substance of

this opinion concerns reasonable expenses and nothing in the Court's analysis of the Motion to

Reconsider affects that analysis, the Court reserves discussion of that Motion to the end.

C.      Decision.

        Plaintiffs' motions for attorney fees and costs are both GRANTED IN PART and

DENIED IN PART.  Twigg is granted reasonable expenses in the amount of $2666.67.

Flanagan is granted reasonable expenses in the amount of $2730.  Sanctions are DENIED.

Thomas Ullrich, Ellis Bennett, and Wharton, Aldhizer & Weaver shall be responsible for pay the

above amounts to Plaintiffs within thirty days from the date of this Order.  Defendant's Motion

to Reconsider is GRANTED IN PART and DENIED IN PART.  It is granted to the extent that

the Court's previous opinion erred in expanding the scope of Flanagan's requests for production

16, 17, and 23.  It is otherwise denied.  Filing objections does not stay this Order.

## II. Facts

1.      Twigg served interrogatories and requests for production on Defendant on September 25,

        2006.  Defendant responded to both sets of discovery on October 25, 2006.

2.      Twigg's counsel found Defendant's responses insufficient.  Counsel wrote to defense

---

[11] Docket No. 142

[12] Docket No. 153

counsel on November 3, 2006, in an effort to resolve the parties' dispute. Twigg's
counsel also spoke with defense counsel by telephone on November 10, 2006.
Unfortunately, the parties did not resolve their dispute.

3.      Twigg filed her motions to compel on November 16, 2006, which proceeded as set forth
above. Twigg sought to compel responses to interrogatories 1-2 in one motion and
requests for production 3 and 5-7 in the other motion.

4.      Flanagan served interrogatories and requests for production on Defendant on October 4,
2006. Defendant responded on November 7, 2006.

5.      Flanagan's counsel found Defendant's responses to her discovery requests insufficient.
In an effort resolve the dispute, Flanagan's cousnel wrote to defense counsel on
November 17, 2006. Defendant's counsel responded to the letter on November 29, 2006.
The letter indicated Defendant disagreed with Flanagan's counsel on the permissibility of
Defendant's objections.

6.      Flanagan filed her motion to compel on December 7, 2006, which proceeded as set forth
above. Flanagan sought to compel responses to interrogatories 2-7 and 10, as well as
requests for production 1-23.

7.      At the evidentiary hearing and oral argument on December 27, 2006, the Court issued an
oral decision. This decision was confirmed by an Order filed on December 29, 2006.
The Court granted both of Twigg's motions to compel in their entirety and granted in part
and denied in part Flanangan's motion to compel. The Court granted Flanagan's motion
to compel concerning interrogatories 2-7. It denied the motion regarding interrogatory
10. The Court also granted Flanagan's motion to compel regarding requests for

production 1-4, 6-8, 11, 13-18, and 23. Flanagan's motion regarding requests for production 5, 9-10, and 19-22 was denied. The Court granted in part and denied in part the motion regarding request for production 12. The Court scheduled an evidentiary hearing and argument on whether Twigg and Flanagan should receive reasonable expenses and sanctions for January 19, 2007.

8.     Defendant filed a Motion to Reconsider on January 12, 2007.

9.     The hearing regarding reasonable expenses and sanctions was held on January 19.

### III. Plaintiffs' Motions for Attorney Fees and Costs

A.     <u>Contentions of the Parties</u>

Twigg and Flanagan ask the Court to grant reasonable expenses. Flanagan also argues for sanctions. Both contend Defendant's arguments against production of the discovery at issue were not substantially justified. Twigg contends Defendant's objections to her discovery violated the Federal and Local Rules and so lacked substantial justification. Flanagan argues Defendant's objections to her discovery requests were boilerplate, internally inconsistent, and contradictory. Flanagan requests payment for 15.6 hours of work at the rate of $300 per hour, for a total of $4,680. Twigg requests payment for 10.9 hours of work at the rate of $250 per hour, for a total of $2,725. Twigg also requests $66.67 in costs.

Defendant asks the Court to deny reasonable expenses and sanctions. Defendant argues that even if its discovery responses were legally inadequate, it relied on case law that they were sufficient. Defendant also contends that the confidential nature of employee documents in some requests warranted an objection that disclosure threatened employee privacy. Finally, Defendant states that if the Court decides to grant reasonable expenses, any amount awarded to Flanagan

should be reduced to account for the fact that Flanagan's motion was only granted in part.

B.    Discussion

I.

The Determination of Whether Plaintiffs Are Entitled to Reasonable Expenses

A.

Standards Regarding How Defendant May Avoid Paying Reasonable Expenses by Having a
Substantially Justified Argument

Interrogatories and requests for production are governed by Federal Rule of Civil

Procedure 33 and 34.  Both Rules provide that a party serving discovery requests make seek a

motion to compel to force the served party to answer the discovery.  Fed. R. Civ. P. 33(b)(5);

34(b).  When a discovery motion is granted, Rule 37(a)(4)(A) is relevant.  Rule 37(a)(4)(A)

states as follows:

> If the motion is granted or if the disclosure of requested discovery is provided
> after the motion was filed, the court shall, after affording an opportunity to be
> heard, require the party or deponent whose conduct necessitated the motion or the
> party or attorney advising such conduct or both of them to pay to the moving
> party the reasonable expenses incurred in making the motion, including attorney's
> fees, unless the court finds that the motion was filed without the movant's first
> making a good faith effort to obtain the disclosure or discovery without court
> action, or that the opposing party's nondisclosure, response, or objection was
> substantially justified, or that other circumstances make an award of expenses
> unjust.

However, where a motion is granted in part and denied in part, the relevant Rule is Rule

37(a)(4)(C).  That Rule provides that where a motion is granted in part and denied in part, a court

may "apportion the reasonable expenses incurred in relation to the motion among the parties and

persons in a just manner."  Id.

Although Rule 37(a)(4)(C) does not contain the same inquiry regarding substantial

justification and other circumstances as Rule 37(a)(4)(A), courts interpreting Rule 37(a)(4)(C) have applied the inquiries of Rule 37(a)(4)(A).  In Mitchell v. AMTRAK, 217 F.R.D. 53, 55 (D.D.C. 2003), the court noted that where a discovery motion is granted in part and denied in part, Rule 37(a)(4)(C) applies.  The court went on to state that "The party compelled can, however, escape liability by establishing that its resistance to the discovery was substantially justified."  Id.  The court cited Rule 37(a)(4)(A).  Id.  The court in Coleman v. Dydula, 175 F.R.D. 177, 180 (W.D.N.Y. 1997) cited Rule 37(a)(4)(A) and noted Rule 37(a)(4)(C).  It then stated that "Thus, unless some special circumstance exists, the losing party can avoid paying expenses only if his or her actions were substantially justified."  Id.  Other courts have also held the inquiries of Rule 37(a)(4)(A) apply to Rule 37(a)(4)(C).  See McCoo v. Denny's, Inc., 192 F.R.D. 675, 696 (D. Kan. 2000); Poole v. Textron, Inc., 192 F.R.D. 494, 498 (D. Md. 2000); Lohrenz v. Donnelly, 187 F.R.D. 1, 10 (D.D.C. 1999); Smith v. Conway Org., Inc., 154 F.R.D. 73, 78 (S.D.N.Y. 1994).  Indeed, it seems obvious that if a party losing a motion to compel may escape reasonable expenses by having a substantially justified argument, a partially prevailing party certainly should.  Allowing the Court to apportion expenses "in a just manner" properly gives the Court extra discretion where a party only partially succeeds.  Fed. R. Civ. P. 37(a)(4)(C); cf. In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 320, 330 (N.D. Ill. 2005).

In Bryte v. American Household, Inc., 142 Fed. Appx. 699, 703 (4th Cir. 2005), the Fourth Circuit held that the definition of substantial justification enunciated by the Supreme Court in Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490, 504 (1988), which was a Social Security case, also applies to the definition of substantial justification in Rule 37.  Other circuits had previously held likewise.  See Doe v. Lexington-Fayette Urban

County Gov't, 407 F.3d 755, 765 (6th Cir. 2005); Pan Am. Grain Mfg. Co., Inc. v. P.R. Ports Auth., 295 F.3d 108, 116 (1st Cir. 2002); Maddow v. Proctor & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997). The Pierce court found to be substantially justified means a party is "justified to a degree that could satisfy a reasonable person." Pierce, 487 U.S. at 565. The standard is "satisfied there is a 'genuine dispute.'" Id.

In this case, both parties at least partially succeeded in their motions to compel against Defendant. Twigg had two motions to compel granted in their entirety. Flanagan had one motion to compel granted in part and denied in part.

Since Defendant lost these motions (at least in part), Twigg and Flanagan are entitled to reasonable expenses unless Defendant's arguments were "substantially justified," special circumstances make the award unjust, or Plaintiff failed to meet and confer before filing her Motion. Fed. R. Civ. P. 37(a)(4)(A); (C). Defendant only argues its objections were substantially justified. The Court also finds that neither of the other two situations apply. The Court will now proceed to examine whether Defendant's arguments had substantial justification.

## B.

### Defendant's Arguments Regarding Twigg's Motions to Compel

The Court first examines whether Defendant had substantial justification regarding its arguments against Twigg's two motions to compel. Both of those motions were granted in their entirety. In response to Twigg's interrogatories at issue in one of the motions to compel, Defendant stated only the general objection that the requests were "overly broad and unduly burdensome[,] exceeds the scope of permissible discovery and is not calculated to lead to the discovery of admissible evidence." Defendant stated nearly identical objections to two of the

four requests for production at issue in Twigg's other motion to compel. Defendant also stated its general objection in the other two requests for production at issue, but added objections based on the attorney client privilege and work product doctrine. Defendant did not provide a privilege log, as required by the Local Rules, or provide the basis for its claims, as required by Federal Rule 26. Twigg argues these responses are insufficient as a matter of law and so deprive Defendant of substantial justification. Defendant argues that although it raised only general objections to Twigg's discovery requests, those responses were permissible given the breadth of the requests. Defendant states that even if the Court did not agree, Defendant's reliance on case law was reasonable.

The Court must first evaluate Defendant's argument that providing only general objections to some discovery requests is legally permissible. It is well established from the published precedent of this district that general objections are impermissible. Fisher v. Baltimore Life Ins. Co., 235 F.R.D. 617, 622 (N.D. W. Va. 2006). This appears to be the clear holding of most courts. For instance, in Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982), the court stated that "the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory." The Fifth Circuit held likewise in McLeod, Alexander, Powell & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990). Many other district courts have reached this holding so that the matter is beyond serious dispute. See, e.g., A. Farber & Partners v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006); Lamoureux v. Genesis Pharm. Servs., 226 F.R.D. 154, 158 (D. Conn. 2004); St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000); Burns v. Imagine Films Entmt., 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996);

Cont'l Ill. Nat'l Bank & Trust Co. v. Caton, 136 F.R.D. 682, 685 (D. Kan. 1991); Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980).

Yet some courts have also held that while general objections are normally impermissible, they do suffice where a discovery request is manifestly over broad, unduly burdensome, or irrelevant. In Wagner v. Dryvit Systems, 208 F.R.D. 606, 610 (D. Neb. 2001), the court stated that while a party normally must make specific objections to discovery requests, this is not the case where "it is obvious from the wording of the request . . . that discovery is overly broad and unduly burdensome." Similarly, in DIRECTV, Inc. v. Puccinelli, 224 F.R.D. 677, 688 (D. Kan. 2004), the court stated that while a party opposing discovery normally has the burden of showing why the discovery is inappropriate, the burden shifts where "the request is overly broad and unduly burdensome on its face." See also Hammond v. Lowe's Home Ctrs., Inc., 216 F.R.D. 666, 671-72 (D. Kan. 2003). The court in Alexander v. FBI, 186 F.R.D. 21, 40 (D.D.C. 1998), stated that "This request is facially over broad . . . Begala is not required to provide plaintiffs with additional responses to this request for this reason." Finally, the court in Stephens v. City of Chicago, 203 F.R.D. 353, 361 (N.D. Ill. 2001), held an interrogatory was "objectionable because it is onerous and unduly burdensome on its face."

Even if this Court were to disagree with this precedent, a party would be substantially justified in relying upon it. This precedent gives the ability to make a plausible case, which is all that is required for substantial justification. Pierce, 487 U.S. at 565. However, simply because reliance on this precedent may give substantial justification does not mean Defendant was substantially justified in objecting to Twigg's discovery requests. It could be that Twigg's discovery requests were not facially over broad, unduly burdensome, or irrelevant. Therefore,

the Court must examine Twigg's discovery requests to determine if a "'genuine dispute'" exists over whether they are facially over broad, unduly burdensome, or irrelevant.  Id.  The Court wishes to emphasize that the discussion below is not about how the Court would have ruled on the underlying discovery requests had specific objections been made, or even about whether Defendant would have been substantially justified in objecting to the requests had Defendant made specific objections and the Court overruled those objections.  The issue is whether Defendant was substantially justified in making only general objections.

The Court begins by examining the two interrogatories at issue.  Interrogatory 1 asked Defendant to name "all prior lawsuits, administrative proceedings or other legal proceedings to which defendant has been a party in which it is alleged that defendant violated the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*."  As noted above, Defendant only stated a normally impermissible general objection against this interrogatory.

Directly on point to whether this was substantially justified is Culkin v. Pitney Bowes, Inc., 225 F.R.D. 69, 71 (D. Conn. 2004).  The plaintiff in that case served a request for production for copies of "any and all documents in which defendant is a party and/or named in any administrative action or lawsuit . . . involving a claim of FMLA discrimination or retaliation from 2001 to present."  Id.  The court found the requests permissible.  Id.  The court stated that "Evidence of general patterns of discrimination by an employer is clearly relevant in an individual disparate treatment case, and is discoverable pursuant to Fed. R. Civ. P. 26(b)(1)."  Id. (quoting Flanagan v. Travelers Ins. Co., 111 F.R.D. 42, 48 (W.D.N.Y. 1986)).  Similarly, the information sought in interrogatory 1 is also subject to discovery.  The extreme similarity between this interrogatory and the material at issue in Culkin also means this interrogatory was

not facially over broad or unduly burdensome.

The information sought in the interrogatory is also relevant because of the affirmative defense of good faith compliance with the FMLA Defendant has asserted. The FMLA provides that when an employer violates the Act, it may be held liable for liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii). However, a court has discretion to decline to award liquidated damages where an employer shows it acted "in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [the FMLA]." Id. It is necessary to demonstrate "*both* good faith *and* reasonable grounds for the act or omission." Chandler v. Specialty Tires of Am. (Tenn.)., Inc., 283 F.3d 818, 827 (6th Cir. 2002) (emphasis in original). "In other words, if . . . the employer subjectively acted in good faith but its conduct was objectively unreasonable, then it is not an abuse of discretion to award liquidated damages." Cooper v. Fulton County, 458 F.3d 1282, 1288 (11th Cir. 2006). Defendant has asserted this statutory defense. Evidence from prior legal proceedings could reveal how other courts or administrative agencies interpreted Defendant's obligations under the FMLA. The other proceedings could pertain to both the good faith and reasonable grounds elements of statute. This makes the information highly relevant to the legitimacy of Defendant's affirmative defense.

Given this precedent, Defendant was clearly not substantially justified in arguing a general objection would suffice. Defendant should have specifically stated why the interrogatory was impermissible. Josephs, 677 F.2d at 992.

Interrogatory 2 was very similar interrogatory 1. Rather than ask for prior suits, the interrogatory sought "the name, current address and telephone number of each person who raised any claim . . . [under the FMLA] since the time Pilgrim's Pride purchased the ConAgra

12

Moorefield facility." The interrogatory also specified it sought only persons with whom an agreement had been reached on one of several factors. Defendant only raised a general objection. This interrogatory is again quite similar to the request found in <u>Culkin</u>, 225 F.R.D. at 71. The information is also relevant to Defendant's good faith defense. 29 U.S.C. § 2617(a)(1)(A)(iii). Persons who previously raised FMLA claims against Defendant could have information regarding how Defendant interpreted its statutory obligations. <u>Id.</u> Finally, the request was not facially over broad or unduly burdensome. The interrogatory only sought information regarding persons Defendant reached an agreement with concerning possible FMLA violations. It was further limited to agreements containing one of three items. This was sufficiently narrow so that if Defendant believed it was over broad or unduly burdensome, it should have made a specific objection. In view of these factors, Defendant was obligated to do more than make a simple general objection to the request. Defendant's failure to do so was not substantially justified.

The Court now examines the sufficiency of Defendant's answers to Twigg's requests for production. Request 3 asked Defendant to produce "The contract, working agreement, or other document setting out the services which CobraServ National Service Center provides to defendant or its agents or employees." Twigg has asserted she received her termination notice from CobraServ, although it was Defendant that employed her. Defendant asserted only a general objection to this request. The Court believes that since Twigg received her termination notice from a company other than her employer, the agreement between her employer and that company is certainly relevant evidence under Rule 26(b). The Court agrees with Twigg that this may not only be "reasonably calculated to lead to the discovery of admissible evidence," but

may be admissible evidence in itself. Fed. R. Civ. P. 26(b)(1). Defendant's objection that the request sought irrelevant information and exceeds the scope of permissible discovery is obviously in error. Furthermore, it is ludicrous to argue the request is plainly "overly broad and unduly burdensome" as Defendant stated since the request only sought the production of one document. Defendant was not substantially justified in objecting to this request.

Request 5 asked Defendant to provide "All documents reflecting any opinion or advice from any source regarding defendant's obligations under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*." Defendant asserted only a general objection to this request, though it added the information was subject to the attorney client privilege and the work product doctrine. Defendant did not provide a privilege log or otherwise specify why the material was protected.

As mentioned above, the FMLA provides an employer violating the Act may be held liable for liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii). The employer may petition the court to not impose liquidated damages by demonstrating a good faith belief in compliance with the Act and a reasonable basis for that belief. Id. Defendant must establish "that it acted with subjective good faith and that it had an objectively reasonable belief that its conduct did not violate the law." Hite v. Vermeer Mfg. Co., 446 F.3d 858, 868 (8th Cir. 2006). The information sought in this request is clearly relevant since Defendant has asserted the defense of good faith compliance with the FMLA. Twigg asked for the information so she could evaluate the legitimacy of Defendant's affirmative defense. Documents relating to advice on the requirements of the FMLA could show both the subjective good faith and objective reasonable basis elements of the defense. Defendant's general objection was not substantially justified.

The Court now evaluates Defendant's attorney-client privilege and work product

protection objections. In <u>Vaughan Furniture Co. v. Featureline Manufacturing Co.</u>, 156 F.R.D. 123, 128 (M.D.N.C. 1994), the court held that where a party intends to use an "attorney's opinions as a sword or shield to affect the factfinding process[,]" those opinions are not covered by the work product doctrine. Other courts have held likewise. <u>Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.</u>, 125 F.R.D. 127, 129-31 (M.D.N.C. 1989); <u>Donovan v. Fitzsimmons</u>, 90 F.R.D. 583, 588 (N.D. Ill. 1981). The same holding applies to assertions of the attorney-client privilege. Courts have held that "As to the attorney-client privilege, the general rule is that the assertion of an advice-of-counsel defense waives that privilege 'as to communications and documents relating to the advice.'" <u>Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, L.P.</u>, 210 F.R.D. 673, 675 (D. Minn. 2002) (quoting <u>SNK Corp. of Am. v. Atlus Dream Entmt. Co.</u>, 188 F.R.D. 566, 570 (N.D. Cal. 1999)). "Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege." <u>Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.</u>, 32 F.3d 851, 863 (3d Cir. 1994); <u>see also</u> <u>Cincinnati Ins. Co. v. Zurich Ins. Co.</u>, 198 F.R.D. 81, 87-88 (W.D.N.C. 2000).

By asserting the good faith defense provided by the FMLA, Defendant waived any work product protection and attorney client privilege it had regarding its good faith compliance with the FMLA since the material goes to the heart of the defense. <u>Minn. Specialty Crops, Inc.</u>, 210 F.R.D. at 675; <u>Vaughan Furniture Co.</u>, 156 F.R.D. at 128. If Defendant disagreed with the above analysis, it should have stated its reasons with specificity. Defendant was not substantially justified in objecting to this request.

Defendant's assertions of privilege were also not substantially justified in that no privilege log was provided. Federal Rule 26(b)(5) states that when a party makes a claim of

privilege, he must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."  The Local Rules require more specific information to be disclosed.  Local Rule 26.04(a)(2)(A)(i) states that a party claiming privilege must "identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked and certify the attorney had reviewed each document for which privilege is asserted."  The Local Rules go on to state that when privilege is claimed regarding a document, the party asserting privilege must state "the type of the document," the document's subject matter, the date the document was made, and any other information necessary to identify the document in a subpoena.  L.R. Civ. P. 26.04(a)(2)(A)(ii)(I).  If the privilege concerns an oral statement, the asserting party must state who made the statement, all persons present when the statement, the relationship of the speaker to the persons present (if not obvious), the date and place of the statement, and "the general subject matter of the communication."  L.R. Civ. P. 26.04(a)(2)(A)(ii)(II).  In Manumitted Cos., Inc. v. Tesoro Alaska Co., 2006 U.S. Dist. LEXIS 57658, at *11 (D. Alaska), the court held that a "bare-bones privilege log and its broad assertions of privilege protection" lacked substantial justification.

Defendant did not provide any privilege log or otherwise specify in any manner why the material sought was protected from discovery.  Defendant's only objection regarding the attorney-client privilege or the work product doctrine was to state that "Pilgrim's Pride objects to the request on the grounds that is see[k]s disclosure of materials subject to attorney-client privilege, attorney work product protection and materials prepared in anticipation of litigation."

This response is plainly insufficient under both the Federal and Local Rules. Fed. R. Civ. P. 26(b)(5); L.R. Civ. P. 26.04(a)(2)(A). Defendant's objection was not substantially justified.

Request 6 asked Defendant to produce all documents relating to any complaints regarding Defendant's alleged failure to comply with the FMLA since the time Defendant purchased the Moorefield facility. The request specified that it included "formal and informal complaints, responses, analyses, settlements or resolution and all other related documents." Defendant objected to the request on the grounds that it sought material covered by the attorney client privilege and work product doctrine. Defendant did not provide a privilege log or otherwise specify why these protections applied. Defendant also raised standard general objections that the request was over broad and unduly burdensome, irrelevant, outside the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

The documents asked for in this request are relevant since they concern Defendant's good faith defense under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). Documents regarding other complaints and the analyses, settlements, or resolutions accompanying them could demonstrate what Defendant understood its obligations to be under the FMLA and whether it had a reasonable basis for that belief. This information is highly relevant. Hite, 446 F.3d at 868.

For the same reasons as stated in the analysis of request 5, the Court concludes Defendant's assertions of the attorney client privilege and work product doctrine, without providing further explanation, were not substantially justified. In asserting the FMLA's good faith defense, Defendant waived any defenses it may have had. Minn. Specialty Crops, Inc., 210 F.R.D. at 675; Vaughan Furniture Co. Defendant's response was also not substantially justified in that it failed to provide any information regarding the contents of the allegedly protected

17

materials, in violation of the Federal and Local Rules.  Fed. R. Civ. P. 26(b)(5); L.R. Civ. P. 26.04(a)(2)(A).

The Court does believe Defendant had substantial justification for objecting to this request as facially over broad to the extent it asked for "all other related documents."  Rule 34(b) requires document requests to specify the items desired "with reasonable particularity."  It has been stated that a request for production is facially over broad and unduly burdensome where it is questionable which of many documents the request encompasses.  Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 382 (D. Kan. 2005).  Such requests require responding parties to engage in guessing games.  Id.  Yet "the responding party still has a duty to respond to the extent the request is not objectionable."  Aikens v. Deluxe Fin. Servs., 217 F.R.D. 533, 539 (D. Kan. 2003).  Twigg's request for "all other related documents" could be perceived to be facially over broad and unduly burdensome based on this precedent.  Although the Court ordered to respond to request 6 without qualification, Defendant had substantial justification for its objection to this extent.  Of course, this did not relieve Defendant of its obligation to respond to the remainder of the request.  Id.  Furthermore, the remainder of the was not facially over broad or unduly burdensome.  In seeking documents regarding complaints about Defendant's alleged failure to comply with the FMLA, the request sufficiently informed Defendant of the relevant documents.  Thus, while Defendant had substantial justification for a small portion of this request, it lacked substantial justification for most of it.

Finally, request 7 asked Defendant to produce any "documents reflecting an agreement with any person who raised any claim under the . . . [FMLA] since the time" Defendant acquired the Moorefield facility.  The request was further limited to agreements promising to do one of

three things: (1) to abstain from cooperation with anyone else; (2) to keep secret any "facts, occurrences, settlements, or other matters pertaining to such claim; or" (3) to give Defendant notice regarding any subpoena or other inquiry the claimant received. Defendant raised only a general objection that the request "is overly broad and unduly burdensome, seeks information that is wholly irrelevant, exceeds the scope of permissible discovery and is not reasonably calculated to lead to the discovery of admissible evidence."

The information in this request is again relevant due to the affirmative defense Defendant asserts under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). The statute allows Defendant to ask the court to not grant liquidated damages if Defendant acted in good faith and had a reasonable basis for its good faith belief. Id. Knowledge of agreements with other persons who alleged FMLA violations could lead to information regarding the obligations Defendant understood the statute to impose. Request 7 was also not facially over broad and unduly burdensome since it concerned only agreements regarding alleged FMLA violations since the time Defendant acquired the Moorefield facility and was further limited to agreements meeting one of several factors. Therefore, the documents sought in the request for production are clearly relevant. Defendant's simple general objection lacks substantial justification.

In sum, Defendant lacked substantial justification for almost all of the interrogatories and requests for production at issue in Twigg's motions to compel. Defendant only had substantial justification for the portion of request for production 6 where Twigg asked for "all other related documents." Otherwise, Defendant lacked substantial justification.

# C.

## Defendant's Arguments Regarding Flanagan's Motion to Compel

The Court now evaluates whether Defendant had substantial justification in objecting to Flanagan's motion to compel. Flanagan moved to compel answers to some of her interrogatories and all of her requests for production. The motion was granted in part and denied in part. Like Defendant's responses to Twigg's discovery requests, Defendant again raised mostly general objections to Flanagan's requests. Defendant stated objections based on attorney client privilege and work product doctrine to some requests, but in no case provided a privilege log or any other indication of why a privilege should apply. Defendant raised further objections based on the confidentiality of the information of others, but did not provide any detail. Flanagan argues Defendant's boilerplate objections were not substantially justified. Defendant argues, like it did regarding Twigg's requests, that it believed it did not have to provide specific responses given the significant over breadth of the requests. Defendant also argues it was substantially justified in objecting to some of Flanagan's requests based on the privacy interests of others. Defendant contends that even if the Court did not agree with its objections, they were substantially justified in view of existing law.

The Court has already evaluated the substance of Defendant's argument that general objections are permissible above. The Court pauses only briefly to note again it is well established from numerous courts, including this one, that a general objection is not normally adequate to state a successful objection to a discovery request. Josephs, 677 F.2d at 992; Fisher, 235 F.R.D. at 622; Lamoureux, 226 F.R.D. at 158. However, some courts have held that where a discovery request is facially over broad, unduly burdensome, or irrelevant, a general objection

will suffice.  Wagner, 208 F.R.D. at 610; DIRECTV, Inc., 224 F.R.D. at 688.  This case law

means that Defendant has substantial justification for its responses to the discovery requests so

long as it is at least arguable the request was manifestly over broad, unduly burdensome, or

irrelevant.  Pierce, 487 U.S. at 565; Wagner, 208 F.R.D. at 610; DIRECTV, Inc., 224 F.R.D. at

688.  The Court wishes to again emphasize that the discussion that follows is not about how the

Court would have ruled had specific objections been presented.  It is also not about whether any

specific objections Defendant would have made would have been substantially justified.  The

issue is whether Defendant was substantially justified in believing the discovery requests at issue

were manifestly over broad, unduly burdensome, or irrelevant.

 The Court begins by examining the interrogatories at issue in Flanagan's motion to

compel.  Interrogatory 2 asked Defendant to "State each fact upon which defendant bases its

affirmative defense that plaintiff failed to mitigate her damages."  It also stated that if Defendant

asserted a privilege, it should produce a privilege log.  Defendant objected that the request on

grounds of attorney client privilege and work product doctrine.  Defendant also asserted the

familiar objection that the request was outside the scope of discovery and not reasonably

calculated to lead to the discovery of admissible evidence.  Lastly, Defendant stated it knew of

no authority requiring it to produce the information.

 The Court believes interrogatory 2 is a clearly permissible contention interrogatory.

Contention interrogatories involve "an opinion or contention that relates to fact or the application

of law to fact."  Fed. R. Civ. P. 33(c); see also In re Priceline.com Inc. Sec. Litig., 233 F.R.D. 83,

87 (D. Conn. 2005); Banks v. Office of the Senate Sergeat at Arms, 222 F.R.D. 7, 13 (D.D.C.

2004).  Contention interrogatories have been defined as interrogatories that request a litigant "to

state what it contends; to state whether it makes a specified contention; to state all facts upon which it bases a contention; to take a position, and explain or defend that position . . . or to state the legal or theoretical basis for a contention."  B. Braun Med. Inc. v. Abbott Lab., 155 F.R.D. 525, 527 (E.D. Pa. 1994); see also Fischer & Porter Co. v. Tolson, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (defining contention interrogatories in a nearly identical form).  Another court similarly defined contention interrogatories as interrogatories that "ask another party to indicate what it contends, to state all facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts."  McCarthy v. Paine Webber Group, Inc., 168 F.R.D. 448, 450 (D. Conn. 1996).  Contention interrogatories are beneficial in that they "can help pin down an opponent's legal theories in a case as well as the primary facts supporting them."  Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 652 (D. Md. 1997).

It is clear from the above precedent that interrogatories may inquire into the contentions of a party.  This is what interrogatory 2 asked Defendant to state.  Defendant was asked to state each fact it claimed showed Flanagan failed to mitigate damages.  Flanagan was permitted to ask this since the interrogatory simply asked Defendant "to state all facts upon which it bases a contention."  B. Braun Med. Inc., 155 F.R.D. at 527.  Given this case law, Defendant was not substantially justified in making only a general objection.  Defendant should have stated exactly why it argued the interrogatory was impermissible.

Interrogatory 3 asked Defendant to "Identify by full citation each administrative regulation, order, ruling, approval or interpretation and administrative practice or enforcement policy upon which" Defendant bases its good faith defense under the FMLA.  Defendant was

instructed to provide a privilege log if it asserted privilege. Defendant asserted the attorney client privilege and work product doctrine, but did not provide any privilege log or otherwise specify why these protections applied. Defendant also objected that the request was outside the scope of discovery and not reasonably calculated to lead to the discovery of admissible evidence. Defendant stated it knew of no obligation to produce the requested information.

For substantially the same reasons as in the discussion of interrogatory 2 above, the Court believes Defendant was not substantially justified in making only a general objection to this interrogatory. Flanagan was permitted to serve an interrogatory asking Defendant "to state the legal or theoretical basis for a contention." Id. That is all this interrogatory asked Defendant to do in requesting it state the law it relied upon for its good faith defense. Given the abundance of case law such as that cited above for interrogatory 2, Defendant was required to do more than make a general objection that the interrogatory was improper. Its failure to do so was not substantially justified.

Defendant was also not substantially justified in objecting to this request since it is relevant to Defendant's affirmative defense under the FMLA. The FMLA permits Defendant to possibly avoid liquidated damages if it can demonstrate it attempted to comply with the Act in good faith and had reasonable grounds for its belief. 29 U.S.C. § 2617(a)(1)(A)(iii). The administrative law Defendant relied upon in forming its alleged good faith belief in compliance with the FMLA is highly relevant to the legitimacy of its defense. Flanagan requires the information to assess whether Defendant really did have a good faith belief in statutory compliance. The information could also demonstrate whether Defendant had a reasonable basis for its belief. Thus, Defendant was not substantially justified in making only a general objection.

The Court considers interrogatories 4 and 5 together because of their similarity. Interrogatory 4 asked Defendant to state the name, address, and phone number of any person "offered light duty, or a job accomodation for a disability, since the time Pilgrims [sic] Pride took over the Moorefield plant, and as to each person describe the job performed and the accommodation made."  Defendant was told that if it wished to assert a claim of privilege based upon privacy, Flanagan would agree to a protective order.  Interrogatory 5 asked Defendant to state the names of persons refused light duty work or other job accommodations and to state the reason for the refusal.  Defendant objected that the interrogatories were over broad, unduly burdensome, outside the scope of permissible discovery, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant also objected the request as invading the privacy rights of its employees.

The Court first notes Defendant's general objection was without merit.  Evidence concerning persons offered disability accommodation versus those not offered accommodation could reveal patterns of discrimination.  Culkin, 225 F.R.D. at 71.  The material is also relevant to Defendant's good faith defense under the FMLA since persons granted or denied disability accommodation could possess information regarding what Defendant understood its obligations to be under the Act.  29 U.S.C. § 2617(a)(1)(A)(iii).  Thus, Defendant's general objection was not substantially justified.

Defendant's objection that producing the material would invade the privacy rights of employees requires a greater explanation.  In Cason v. Builders Firstsource-Southeast Group, Inc., 159 F. Supp. 2d 242, 247 (W.D.N.C. 2001), the court held a strong public policy exists against disclosure of employee information.  Yet employee files are subject to discovery "where

the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses and especially where, as here, the court has issued an appropriate confidentiality order." Id. The Cason court ordered production of personnel files of persons the plaintiff alleged harassed him. Id. at 248. The court denied production of other employee files. Id. It was noted the defendant failed to show how the information of other employees was relevant, except that examination of the files could show disparate treatment as between the plaintiff and other employees. Id. The court found this insufficient to outweigh employee privacy. Id.

The court in Blount v. Wake Membership Electric Corp., 162 F.R.D. 102, 105-06 (E.D.N.C. 1993), reached similar conclusions. The court found personal privacy concerns should prevent disclosure of employee information in many instances. Id. at 105. Yet the court also found the need for broad discovery would sometimes necessitate disclosure. Id. Disclosure of employee files would be appropriate where the material was obviously relevant or the party seeking discovery had a compelling need for the material. Id. at 106. The Blount court ordered production of the personnel file of an employee, who was also a defendant, the plaintiff alleged acted negligently. Id.

Perhaps the most expansive discussion of a privilege against production of employee personnel files came in Raddatz v. Standard Register Co., 177 F.R.D. 446, 447-48 (D. Minn. 1997). The plaintiff alleged his employer terminated him on the basis of age. Id. at 446. The plaintiff sought the production of the personnel files of more than a hundred employees. Id. at 447. The court found that where production of non-party employee files is at issue, heightened scrutiny is appropriate since "the very act of disclosing an employee's sensitive and personal

data is a highly, and frequently, an unnecessarily intrusive act." Id. at 447-48. In the view of the

Raddatz court, before production of employee files is ordered, a court must first satisfy itself that

the information is relevant. Id. at 448. Simply because someone may be a witness does not

make the information relevant. Id. Furthermore, disclose of the entire personnel file should be

ordered only as a last resort. Id. After applying the competing considerations of privacy and the

need for discovery, the court ordered disclosure of limited information regarding the employees

at issue. Id. The court ordered the defendant to identify "1. Their identities, their ages at the

time of termination, and their dates of birth; 2. Their current addresses and phone numbers . . .

[or] their last known addresses and phone numbers; 3. The reasons for their terminations; and 4.

Their salaries at the time of termination." Id.

Other courts have also considered employee privacy interests in discovery. Courts

unanimously agree non-party employees in a case have significant interests in avoiding

disclosure of their personal information. See, e.g., Gehring v. Case Corp., 43 F.3d 340, 342 (7th

Cir. 1994); Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 517 (D. Minn. 1997); Whittingham

v. Amherst College, 164 F.R.D. 124, 127-28 (D. Mass. 1995); Miles v. Boeing Co., 154 F.R.D.

112, 115 (E.D. Pa. 1994).

In spite of the above holdings, none of this precedent addresses the situation in

interrogatories 4 and 5 in this case. These interrogatories do not seek employee personnel files

at all. They only seek information on names, addresses, phone numbers, job accommodations

(or lack thereof), and reasons for accommodation (or lack thereof). This is extremely similar to

the discovery permitted in Raddatz, 177 F.R.D. at 448. The interrogatories do not ask to go

through large amounts of employee information in the hopes of obtaining useful material.

Furthermore, the information sought in these interrogatories is highly relevant, as noted above. The evidence could reveal patterns of discrimination. Culkin, 225 F.R.D. at 71. It could also lead to evidence concerning Defendant's belief about its obligations under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

Although Defendant's argument is legally tenuous, the Court cannot say it lacks substantial justification. The public policy against disclosure of employee information is significant. Cason, 159 F. Supp. 2d at 248. Defendant may have thought the discovery did not outweigh the privacy interests of the non-party employees. Onwuka, 178 F.R.D. at 517. It should also be noted the party seeking discovery of personal employee information bears the burden of showing why it should receive the information, whereas normally the party opposing an interrogatory has the burden of showing why it is inappropriate. Id.; Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D. W. Va. 1970). Thus, even though the Court disagreed with Defendant privacy argument, Defendant had substantial justification in objecting to interrogatories 4 and 5.

The Court next addresses interrogatories 6 and 7 together since they also present similar topics. Interrogatory 6 asked Defendant to identify former and current employees of "the Moorefield facility who have filed an administrative charge of disability discrimination or who have filed suit in court alleging disability discrimination since the time Pilgrim's Pride too over the Moorefield plant." Interrogatory 7 asked the same question, except that it inquired about suits alleging violations of the FMLA. Defendant raised general objections and also reiterated its privacy objection.

The Court finds Defendant's general objection was entirely without merit. Culkin

provides that "Evidence of general patterns of discrimination by an employer is clearly relevant in an individual disparate treatment case, and is discoverable pursuant to Fed. R. Civ. P. 26(b)(1)." Culkin, 225 F.R.D. at 71 (quoting Flanagan, 111 F.R.D. at 48). In Culkin, this meant "any and all documents in which defendant is a party and/or named in any administrative action or lawsuit . . . involving a claim of FMLA discrimination or retaliation." Certainly the identities of employees filing suit and the agency or court hearing the suit is similarly subject to discovery. The information regarding FMLA suits is also again relevant to Defendant's affirmative defense of good faith compliance with the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). Furthermore, this interrogatory is not facially over broad or unduly burdensome. It is not unreasonable to expect Defendant to keep records of persons filing suit against it and to ask Defendant to summarize those records in the form this interrogatory seeks. Defendant was not substantially justified in making only a general objection. If Defendant disagreed with this law, it should have stated its reasons with specificity. Fed. R. Civ. P. 33(b)(4). A general objection does not suffice. Josephs, 677 F.2d at 992.

Defendant's objection based on privacy interests was also not substantially justified. Cases considering a privilege based on employee privacy involve discovery requests seeking significant amounts of information from employee personnel files. Raddatz, 177 F.R.D. at 447; Miles, 154 F.R.D. at 115. In this case, Defendant will not be asked to reveal information from personnel files, except perhaps the name and address of the person involved in the administrative action or suit. This is only a de minimus invasion of privacy that is not contemplated in the privacy privilege. Discovery of addresses and phone numbers was explicitly permitted by the Raddatz court. Raddatz, 177 F.R.D. at 447. Furthermore, almost all, if not all of the information

requested in these interrogatories will found in public records. There will be no invasion of privacy at all. Defendant was not substantially justified in arguing against these discovery requests.

Finally, the Court considers interrogatory 10. The Court denied the motion to compel regarding this discovery request. Therefore, the Court need not consider it any further since Defendant obviously had substantial justification in objecting to it.

The Court now moves to consider Flanagan's requests for production. Request 1 asked Defendant to produce "The buy-sell agreement, which included the Moorefield facility, between ConAgra and Pilgrims [sic] Pride, and any other document which describes the assumption of liabilities and/or employee obligations as between ConAgra and Pilgrims [sic] Pride." Defendant responded with only a general objection. It stated that "Pilgrim's Pride objects to this Request as it seeks documents neither relevant to this matter nor reasonably calculated to lead to the discovery of admissible evidence." Since Defendant raised only a general objection, he must show the request was at least arguably facially over broad, unduly burdensome, or irrelevant in order to be substantially justified. Pierce, 487 U.S. at 565; Josephs, 677 F.2d at 992; DIRECTV, Inc., 224 F.R.D. at 688. Defendant only objected as to relevance.

The Court finds this information is clearly relevant to Flanagan's claims and Defendant was not substantially justified in objecting to it. Defendant purchased the facility at which Flanagan was employed from ConAgra. Flanagan asserts Defendant has stated it never employed her, but rather that only ConAgra employed Flanagan. The purchase agreement is extremely relevant to determining who may have liability for the claims asserted in this suit. Defendant was not substantially justified in making only a general objection. It should have

stated why the above analysis is incorrect with specificity.

Requests 2 and 3 both asked Defendant to produce documents "showing labor costs and further referencing costs associated with leave or lost time due to injuries, disabilities, and/or Family Medical Leave."  The only difference between the two requests was that request 2 concerned documents produced before or at the time of Defendant's acquisition of the Moorefield facility, while request 3 pertained to documents produced after that time.  Defendant raised a general objection to both requests on the ground they were "vague, ambiguous, and . . . neither relevant to the pending matter nor reasonably calculated to lead to the discovery of admissible evidence."  Defendant also objected on the basis of the attorney client privilege and the work product doctrine, though it did not provide any detail as to why these protections applied.

The Court first finds Defendant's general objection improper since the requests were not manifestly inappropriate.  First, the requests are not ambiguous.  They sufficiently identify the documents Flanagan seeks production of to allow Defendant to obtain the material.  Second, the documents are relevant to instant subject matter.  Information regarding the cost of leave from injury or disability could demonstrate Defendant had a reason to terminate the employment of those suffering such problems.

Defendant's objections based on the attorney client privilege and work product doctrine were also improper since Defendant failed to show in any way why the material should be subject to protection.  The party asserting the attorney client privilege or work product doctrine has the burden of showing why it applies.  In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 338-39 (4th Cir. 2005); Sandberg v. Va. Bankshares, Inc., 979 F.2d 332, 355 (4th Cir.

1992).  As mentioned above, the Federal and Local Rules provide mechanisms for a party asserting a privilege to meet this burden.  Fed. R. Civ. P. 26(b)(5); L.R. Civ. P. 26.04(a)(2)(A).[13] In this case, Defendant did not provide any of the information required by the Rules, and did not provide any other information.  Defendant's entire assertion of privilege to requests 2 and 3 consisted of stating that "Pilgrim's Pride objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege or the attorney work product doctrine." This is clearly insufficient.  Defendant was not substantially justified in making so simple an assertion of privilege.

Request 4 asked Defendant to provide a list showing "job vacancies at the Moorefield facility since October 1, 2003, and a [sic] to each job produce a job description."  Defendant raised only a general objection.

The Court concludes Defendant was not substantially justified in raising only a general objection to this request since the request was not facially impermissible.  Josephs, 677 F.2d at 992; DIRECTV, Inc., 224 F.R.D. at 688.  Flanagan has raised a claim under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq.  The Act prohibits discrimination in hiring or tenure decisions on the basis of disability as long as the person is able to perform the position in question.  W. Va. Code § 5-11-9(1).  Flanagan states she asked Defendant to place her in a less physically demanding position.  Flanagan also states Defendant's vocational expert believes Flanagan's medical impairments prevent her from any continued employment at the Moorefield facility.  The jobs that have been available at the Moorefield facility are obviously relevant to determining whether any work has existed Flanagan could perform.  The request is also not

---

[13] The Court will not set out the relevant content of these Rules again.  The above discussion of request for production 5 of Twigg contains this information.

facially over broad or unduly burdensome.  Flanagan simply asked Defendant to produce a list of job vacancies at the Moorefield facility since October 1, 2003.  It is not unreasonable to expect Defendant to maintain such data.  Additionally, the scope of the request only went back three years from the time the request was served.  This is a reasonable time frame in which to ask Defendant to produce records.  Defendant was not substantially justified in raising only a general objection to this request.

The underlying motion to compel regarding request 5 was denied by the Court.  Thus, Defendant obviously had substantial justification in objecting to it.

Requests 6 and 7 asked Defendant to produce "operating manuals, memoranda, emails, handbook[s], and/or other documents" regarding similar topics.  Request 6 concerned Defendant's "practices and/or policies toward employees with disabilities and/or procedures for accommodating said employees and perspective [sic] employees."  Request 7 involved "practices and/or policies toward employees seeking and/or using FMLA, and/or procedures to be followed in and/or responding to FMLA situations."  Defendant raised only a general objection to this request.  However, Defendant also referred Flanagan to the Partner Handbook it produced in discovery.

The materials sought in these two requests are clearly relevant and tailored to the case so that Defendant was not substantially justified in objecting to them.  The material sought in request 6 is relevant to Flanagan's claim under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq.  The materials could show whether Defendant discriminated in hiring and retaining persons with disabilities.  W. Va. Code § 5-11-9(1).  The materials sought in request 7 are relevant to Defendant's good faith defense under the FMLA.  29 U.S.C. § 2617(a)(1)(A)(iii).

They could show what Defendant understood its obligations to be under the statute.  Id.
Furthermore, the scope of these requests is not facially over broad.  To the contrary, the requests
are limited to materials either concerning disability or the FMLA.  Finally, although Defendant
referred Flanagan to the Partner Handbook it previously produced, there is no indication that this
is the only responsive material.  The phrasing of the request makes it highly unlikely that is the
case.  Defendant was not substantially justified in objecting to these two requests.

Request 8 asked Defendant to produce "All intra-office memos, letters, emails or other
electronic files, and all computer back-ups that contain any record referencing plaintiff
Flanagan's disability, her accommodation or her FMLA status."  Defendant responded with a
general objection.  It also asserted the attorney client privilege and the work product doctrine,
though it provided no detail about why they applied.  Finally, Defendant stated that "any
documents responsive to this request relative to Plaintiff Flanagan are contained in her personnel
and/or medical files previously produced."

There is a conflict of precedent on whether a party served with requests for production
may refer the serving party to documents already produced as a sufficient answer.  In Johnson v.
Kraft Foods North America, Inc., 236 F.R.D. 535, 540-41 (D. Kan. 2006), the court held that a
party may reference documents previously produced as long as it demonstrates it produced those
documents in the ordinary course of business pursuant to Federal Rule of Civil Procedure 34(b).
The simple assertion that the documents were produced in the ordinary course of business is
insufficient.  Id.  Where the served party fails to meet this burden, the court should order it to
identify which of the documents previously produced are responsive to the request.  Id. at 541.
A similar decision was reached in Cory v. Aztec Steel Building, Inc., 225 F.R.D. 667, 671-72 (D.

Kan. 2005). The court there held that the objection that there are "'no responsive documents beyond what have previously been produced'" is not valid. Id. at 671. The court ordered the served party to provide greater specificity about the responsive documents. Id. at 671-72. Another court largely agreed with these cases in In re G-I Holdings Inc., 218 F.R.D. 428, 439-440 (D.N.J. 2003). The responding party there referred the serving party to over 200,000 pages of documents, without providing any specificity as to which were responsive to the particular requests. Id. at 439. The court found this sufficient since the documents were produced in the ordinary course of business. Id. at 439-440.

Other courts have held a simple statement that responsive documents have been produced is sufficient. In Rayman v. Springfield Properties Holdings, Inc., 150 F.R.D. 634, 636-637 (D. Neb. 1993), the court held a party could simply assert it had already produced the documents responsive to a request as long as such a statement was made under oath. Additionally, a variety of unpublished precedent supports the notion that a simple reference to already produced documents is adequate. In Smith v. Equifax Information Services, Inc., 2005 U.S. Dist. LEXIS 24742, at *7 (D. Conn.), the served party alleged it had already produced all responsive documents. The serving party disputed this claim. Id. at *7-8. The court simply ordered the answering party to produce any responsive documents it had not provided. Id. at *8. Another court seemed to agree with this holding when it held that to the extent requests for production duplicated other requests, the served party "can simply answer these requests by reference to its prior production." Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd., 2002 U.S. Dist. LEXIS 14466, at *10-11 (S.D.N.Y.). Finally, in Ashanti v. California Department of Corrections, 2006 U.S. Dist. LEXIS 71114 (E.D. Cal.), the court held that where "defendant maintain that they have

found no documents responsive to plaintiff's request . . . The court cannot compel production of documents not within the possession, custody or control of a responding party."

Given this conflict in precedent, the Court finds Defendant was substantially justified in asserting it previously produced all responsive materials. It is true that Defendant did not comply with any of the published precedent cited above. Defendant produced no evidence it provided all documents responsive to this request in the ordinary course of business. Johnson, 236 F.R.D. at 540-41. Defendant also did not state under oath it produced all responsive documents. Rayman, 150 F.R.D. at 636-637. However, its actions did comply with the requirements set out in the unpublished cases cited above. Smith, 2005 U.S. Dist. LEXIS 24742, at *7-8; Funai Elec. Co., Ltd., 2002 U.S. Dist. LEXIS 14466, at *10-11. Substantial justification only requires a "'genuine dispute,'" which is an extremely low standard. Pierce, 487 U.S. at 565. The Court believes Defendant's actions met this minimal threshold.

The underlying motion to compel regarding requests for production 9 and 10 was denied. Therefore, Defendant was substantially justified in objecting to these requests.

Request 11 asked Defendant to produce documents reflecting the policy of either ConAgra or Defendant concerning the FMLA during 2003. Defendant was told that if it asserted privilege, it should produce a privilege log. Defendant responded with a general objection and did not assert any privilege. Defendant also referred Flanagan to the Partner Handbook it previously produced.

Defendant was not substantially justified in making only a general objection. The information is plainly relevant to Defendant's good faith FMLA defense. 29 U.S.C. § 2617(a)(1)(A)(iii). The request is also not facially over broad or unduly burdensome since it

only seeks information regarding Defendant's understanding of the Act it claims a defense under. Although Defendant referenced the Partner Handbook previously produced in discovery, it appears quite unlikely this is the only responsive document to this request. Thus, Defendant lacked substantial justification.

Request 12 asked Defendant to produce documents "reflecting Pilgrims [sic] Pride's policies, practices and/or proposals for handling employees who were on leave for work place injury and/or FMLA at the ConAgra Moorefield facility." Defendant again responded with only a general objection, stating that the request was "vague, overbroad and seeks information neither relevant to the claims or defenses raised nor reasonably calculated to lead to the discovery of admissible evidence." Flanagan was again referred to the Partner Handbook previously produced. This Court sustained in part and overruled in part the objection. The objection was sustained as it related to work place injury, but overruled to the extent it related to the FMLA. Regarding the portion of the request where the objection was sustained, Defendant obviously had substantial justification. Yet Defendant was not substantially justified in objecting to the portion of the request relating to the FMLA. The information is clearly relevant to how Defendant understood the FMLA and therefore concerns its statutory defense. 29 U.S.C. § 2617(a)(1)(A)(iii). The way Defendant treated employees is especially relevant to the subjective good faith portion of the statutory defense, which requires Defendant to "establish that it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it." Hite, 446 F.3d at 868. The Court also believes the request was not facially over broad since it informed Defendant it only concerned Defendant's policies regarding FMLA implementation at the Moorefield facility. This sufficiently tailored the request to permit a response. It is again

unlikely the Partner Handbook contained all the responsive information.  Thus, Defendant was not substantially justified in making only a general objection.

Request 13 asked Defendant to produce "Each document describing the process used by the defendant to determine if an employee has a disability which was in effect at and since the time Pilgrims [sic] Pride purchased the ConAgra Moorefield facility."  Defendant objected to this request on the basis of the work product doctrine and the attorney client privilege, though it did not provide a privilege log or otherwise specify why the material was subject to protection.  Defendant also stated it did not know of the existence of any responsive documents.  For the same reasons as stated above in the discussion regarding request 8, the Court concludes that while Defendant's response that no responsive documents exist is insufficient under a majority of precedent, sufficient precedent exists to make Defendant's response substantially justified.

Request 14 asked Defendant to produce "Any record used by Pilgrim's Pride for identifying those employees who were on FMLA and/or any form of medical leave for whatever reason and/or were disabled (according to ConAgra)."  Defendant objected that the request was "vague, overbroad and seeks information neither relevant to the claims or defenses raised nor reasonably calculated to lead to the discovery of admissible evidence.  It is also overbroad in seeking documents which have no probative value in this case."

The Court concludes Defendant was not substantially in raising on a general objection to this request.  The FMLA requires employers to provide certain employees up to twelve weeks of leave per year if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Flanagan has alleged Defendant sought pre-textual ways to avoid its obligations under the

FMLA. Documents regarding the ways Defendant identified disabled persons could show the validity or lack thereof concerning this assertion. The documents could also demonstrate whether Defendant was attempting to comply with its obligations under the Act in good faith, which relates to Defendant's affirmative defense. 29 U.S.C. § 2617(a)(1)(A)(iii); Hite, 446 F.3d at 868 (stating that a party asserting the FMLA's affirmative defense must "establish that it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it"). This request is also not facially over broad. The request sufficiently identifies the information sought so as to allow Defendant to comply. Defendant was not substantially justified in raising only a general objection to this request.

Request 15 sought all documents or other records "regarding or referring to plaintiff's medical leave, usability [sic] or request for FMLA." Defendant was instructed that if it conducted a search and the search did not reveal any responsive documents, it should describe the efforts it made to locate documents. Defendant objected to this request on the ground that it was "overly broad, vague, ambiguous, unduly burdensome, seeks information subject to attorney work product protection and/or attorney-client privilege." Defendant did not provide a privilege log or otherwise state why the information should not be produced. However, Defendant did state that "any documents responsive to this Request relative to Plaintiff Flanagan are contained in her personnel and/or medical files previously produced." Thus, Defendant stated it had already given Flanagan all the files it had. For the same reasons as enunciated in the discussion regarding request 8, the Court concludes that while this answer is impermissible under the majority weight of precedent, Defendant was substantially justified in asserting it.

The Court considers requests 16 and 17 together due to their similarity. Request 16

sought "All documents concerning any complaints made since the time Pilgrims [sic] Pride purchased the ConAgra Moorefield facility and continuing to the present by any individual or entity concerning defendant's failure to comply with the FMLA." Defendant was instructed the request included both formal and informal complaints, as well as "responses, analyses, settlements, or resolutions and all other related documents." Defendant was also told that if it claimed privilege, it should produce a privilege log so the Court could evaluate the merits of the assertion. Request 17 contained the same substance as request 16, except that it asked for complaints alleging disability discrimination. Defendant responded with general objections to both requests. Defendant also argued the information would invade the privacy rights of employees. The Court notes these requests are very similar to Twigg's request for production 6.

Unlike Twigg's request 6, the Court believes Defendant had substantial justification for objecting to these two requests since it objected on the basis of the privacy of non-party employees. Defendant did not raise the privacy issue against Twigg's request 6. Disclosure of internal complaints and related documents could involve sensitive employee information courts are loathe to disclose unnecessarily. Blount, 162 F.R.D. at 105-06. Courts should take care to avoid disclosure of non-party employee information by carefully scrutinizing the material at issue. Raddatz, 177 F.R.D. at 447-48. It is true that Defendant did not provide any detail about why the requests at issue would disclose sensitive information. Nevertheless, the Court considers it so obvious that such information would be involved as to make Defendant's argument substantially justified. The Court notes Defendant's facial over breadth objection was also substantially justified to the extent the requests sought production of "all other related documents" for the same reasons as in the discussion of Twigg's request 6.

Request 18 sought "All documents concerning any investigation of either plaintiff or the allegations made in the complaint." Defendant was instructed that if it claimed a privilege, it should provide a privilege log. Defendant stated only a general objection to the request. It objected that the request "is overly broad and is not reasonably calculated to lead to the discovery of admissible evidence." Therefore, Defendant has waived all objections except to the extent the request was facially over broad or seeking irrelevant material. Josephs, 677 F.2d at 992; DIRECTV, Inc., 224 F.R.D. at 688. The Court believes the material from this request is extremely relevant to the case. Documents concerning the allegations in the complaint obviously go to the heart of the case. Many other documents concerning Twigg and Flanagan will likely be admissible at trial. Furthermore, the request is not facially over broad since it is limited to documents concerning Twigg and Flanagan. Defendant was not substantially justified in raising only a general objection to this request.

The Court denied the underlying motion to compel regarding requests for production 19, 20, 21, and 22. Defendant certainly had substantial justification in objecting to these requests.

Finally, request 23 asked Defendant to produce "All documents concerning an agreement with any person who at any time raised any claim under the FMLA, the West Virginia Human Rights Act or any other antidiscrimination statute since the time Pilgrim's Pride purchased the ConAgra Moorefield facility." The request was further limited to agreements where the person raising the claim agreed to either not cooperate with any other person, not disclose other matters relevant to the claim, or to give Defendant notice if the person was ever served with a subpoena. Defendant simply raised a general objection to this request. Defendant also stated it knew of no responsive documents. For the same reasons as stated in the discussion of request 8 above, the

Court finds Defendant was substantially justified in opposing this request based upon its answer that it knew of no responsive documents. Although only a minority of case law supports the notion that this is a sufficient answer, little is needed for substantial justification. Pierce, 487 U.S. at 565.

Thus, Defendant lacked substantial justification regarding interrogatories 2-3, and 6-7, and requests for production 1-4, 6, 11, 14, and 18. Defendant had substantial justification in objecting to interrogatories 4-5 and 10, and requests for production 5, 8-10, 13, 15-17, and 19-23. Defendant was partially substantially justified in objecting to request for production 12. In sum, this means Defendant lacked substantial justification regarding 13 1/2 discovery requests and had substantial justification for 16 1/2 requests.

IV.

Determination of the Attorney Fees and Costs Plaintiff Should Receive

A.

Standards in Determining Attorney Fees and Costs

Any award of attorney fees and costs will come under Rule 37(a)(4). That Rule allows a party to obtain "reasonable expenses incurred in making the motion, including attorney's fees." Id. Where the underlying Motion is granted in part and denied in part, the Court may "apportion the reasonable expenses incurred in relation to the motion among the parties in a just manner." Fed. R. Civ. P. 37(a)(4)(C). The Fourth Circuit has not established any specific approach for calculating attorney fees under Rule 37(a)(4). Poole, 192 F.R.D. at 507. Case law from other courts, however, is well established.

The Court first notes the moving party bears the burden of proof. Kister v. Dist. of

41

Columbia, 229 F.R.D. 326, 329 (D.D.C. 2005). Even if the movant meets its burden, the Court retains considerable discretion to adjust any fee in light of objections. Id.

Attorney fees are "properly calculated by multiplying the number of hours expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888, 104 S. Ct. 1541, 1543, 79 L. Ed. 2d 891, 895 (1984). Parties "should exercise 'billing judgment'" regarding the number of hours for which they seek compensation. Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40, 53 (1983). This means that "Counsel . . . should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Id. at 434; see also Scham v. Dist. Courts Trying Crim. Cases, 148 F.3d 554, 558 (5th Cir. 1998) (stating that a party may also not seek compensation "for time that is excessive, duplicative, or inadequately documented"). The moving party "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437. Counsel is, of course, "not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." Id. at n.12.

In the discovery context, a party seeking attorney fees may only recover for time spent in preparing the discovery motion. Tollett v. City of Kemah, 285 F.3d 357, 368 (5th Cir. 2002). The party may not recover for time spent in preparing the discovery requests leading to the motion. Id. "Discovery dispute or no, those fees would have been incurred." Id. However, a court may approve hours allegedly spent on underlying dispute where the time is not contested. Baulch v. Johns, 70 F.3d 813, 818 n. 8 (5th Cir. 1995). A court may disapprove uncontested time where it has personal knowledge counsel did not spend the time alleged on the case.

McDonald v. McCarthy, 966 F.2d 112, 119 (3d Cir. 1992).

The rate an attorney should be paid per hour is "the prevailing market rates in the relevant community." Blum, 465 U.S. at 895. The important community "is ordinarily the community in which the court where the action is prosecuted sits." Rum Creek Coal Sales v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994). The actual rate charged by the petitioning attorney is the starting point for determining a reasonable rate. Id. Affidavits from other attorneys may also be used to establish a rate is reasonable. Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 938 (Fed. Cir. 2000); Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996). When no reasonable rate is established, the district court should exercise its discretion to determine a reasonable rate. Washington, 89 F.3d at 1036 (quoting Griffiths vs. Cigna Corp., 77 F.3d 462 (3d Cir. 1995) (unpublished)). A court may approve a rate sought with insufficient evidence where the non-moving party does not contest the rate. Baulch, 70 F.3d at 818 n. 8 (approving an uncontested rate, but declining to hold whether the rate was actually reasonable for the local market). In fact, one court has held that a "district court abused its discretion in reducing the uncontested market rate." Bankston v. Illinois, 60 F.3d 1249, 1256 (7th Cir. 1995).

Once a court determines the number of hours eligible for attorney fees, it should use the lodestar method to calculate the fee. Broccoli v. Echostar Communications Corp., 229 F.R.D. 506, 512 (D. Md. 2005). The lodestar number results from multiplying the number of hours eligible for fees times the fee rate. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098, 92 L. Ed. 2d 439, 456 (1986).

Where a court denies an underlying motion in part and grants it in part, the court may

further reduce the amount to account for the degree of the prevailing party's success. Poole, 192 F.R.D. at 498 (quoting Fed. R. Civ. P. 37(a)(4)(C)). While a court has authority to apportion a fee award, it has discretion not to do so and instead to simply award the entire fee. Coleman, 175 F.R.D. at 182. Rule 37(a)(4)(C) allows the Court to fashion a fee "in a just manner" in order to account for the relative strength of the parties' positions.

The Court may award attorney fees and costs against either a party or counsel. Fed. R. Civ. P. 37(a)(4)(A). However, "In the absence of any evidence indicating that . . . [the party] itself was responsible for the sanctionable conduct, the Court will impose the sanctions against the law firm" of defense counsel. DIRECTV, Inc., 224 F.R.D. at 693 n. 56; see also Sonnino v. Univ. of Kan. Hosp. Auth., 220 F.R.D. 633, 656 n. 91 (D. Kan. 2004).

B.

The Evidence in this Case and the Fee Determination

The Court begins by examining the attorney fees and costs Twigg should receive. Twigg seeks an award of $2,791.67. She arrives at this number by asking for attorney fees at the rate of $250 per hour for 10.9 hours of work, plus $66.67 in costs. Twigg's counsel has submitted an affidavit in support of this rate, including an itemized statement of the work expended.

The Court begins by determining the number of hours eligible for attorney fees. The pleadings reflect that Defendant failed to contest the legitimacy of the number of hours Twigg's counsel alleges was spent in preparation for this case. Defendant also raised no objection at oral argument. Therefore, the Court will sustain the hours alleged unless it is obvious counsel did not actually work on the case during the relevant time period. McDonald, 966 F.2d at 119. The Court has no personal knowledge of any time stated on the affidavit. However, it is obvious

from the list of time expenditures that counsel did not work .5 hours on the case as alleged on December 21, 2006. Counsel states he worked this time reviewing motions regarding a deposition of one Brandy Barb. The Barb deposition is outside the context of this opinion. Therefore, this time is disallowed. It is not facially obvious any of the remaining time alleged was not worked on this case. Thus, the Court sustains the remaining time, for a total of 10.4 hours worked.

The Court now considers the rate Twigg's counsel should receive for the time he spent on this case. Twigg seeks a rate of $250 per hour and has submitted evidence in support of that rate. However, the Court need not consider that evidence since Defendant has not at all contested the reasonableness of this rate, either in the pleadings or at oral argument. Bankston, 60 F.3d at 1256. The rate of $250 per hour will apply.

The Court now applies the lodestar method to determine the precise fee Twigg should receive. Broccoli, 229 F.R.D. at 512. Multiplying $250 times 10.4 hours results in a fee of $2600.

The Court notes it was found above that Defendant had substantial justification for a small portion of its objection to Twigg's request for production 6. The Rules provide reasonable expenses should not be awarded where a party was substantially justified in opposing a motion to compel. Fed. R. Civ. P. 37(a)(4)(A). Thus, the Rules leave open the possibility of apportionment based on this substantial justification, even where a motion to compel was entirely granted, as were Twigg's two motions. Id. However, given that the Court has determined Defendant lacked substantial justification for its objections to all six of Twigg's discovery requests at issue in the underlying Order, except for a small portion of one request, the

Court does not believe any apportionment is appropriate.

Finally, Twigg seeks $66.67 in costs. Defendant has again failed to contest this claim in any way. Therefore, these costs will be allowed. <u>McDonald</u>, 966 F.2d at 119.

For the foregoing reasons, Twigg's Motion for Attorney's Fees and Costs is hereby GRANTED IN PART and DENIED IN PART. Thomas Ullrich, Ellis Bennett, and Wharton, Aldhizer & Weaver, P.L.C. shall be responsible for paying $2666.67 to Twigg within **<u>thirty days</u>** from the date of this Order. Filing objections does not stay this Order.

The Court now considers whether Flanagan should receive attorney fees and costs. Flanagan seeks attorney fees in the amount of $4680. She arrives at this number by listing 15.6 hours of time spent on this case at the rate of $300 per hour. Flanagan does not seek any other costs related to this dispute.

The Court begins by examining how many hours of the hours listed are eligible for attorney fees. As in the case of Twigg, Defendant has failed to contest the hours of work Flanagan alleges her counsel worked on this case, either in pleadings or at oral argument. The Court will therefore sustain the time unless it is obvious counsel did not spend the time alleged working on the case. <u>McDonald</u>, 966 F.2d at 119. It is not facially obvious from Flanagan's itemized statement that her counsel did not spend any of the time alleged to be spent working on this discovery dispute in another activity. Thus, the Court sustains the 15.6 hours of time for which Flanagan seeks compensation.

The rate per hour of work Flanagan should receive will now be considered. Flanagan seeks $300 per hour. Defendant did not contest this rate in the pleadings or at oral argument. The $300 rate will therefore apply. <u>Baulch</u>, 70 F.3d at 818 n. 8; <u>Bankston</u>, 60 F.3d at 1256.

The Court now employs the lodestar method to determine the precise fee Flanagan should receive. Broccoli, 229 F.R.D. at 512. Multiplying $300 by 15.6 hours results in an amount of $4680.

Yet because Defendant had substantial justification for many of the requests for admission in dispute, the Court believes a reduction in this award is appropriate. Poole, 192 F.R.D. at 498 (quoting Fed. R. Civ. P. 37(a)(4)(C)). The Rules give the Court significant discretion to calculate a fee accurately reflecting the merits of the case, allowing the Court to fashion a fee "in a just manner." Fed. R. Civ. P. 37(a)(4)(C). Flanagan sought to compel responses to thirty discovery requests in the underlying motion to compel. The Court granted the motion to compel regarding 21 requests, denied it regarding 8 requests, and granted in part and denied in part the motion regarding 1 request. As noted above, the Court determined Defendant has substantial justification in objecting to a greater number of request. The Court found defendant was substantially justified in objecting to 16 1/2 requests, and lacking in substantial justification only as to 13 1/2.

The Court must now determine how to fairly apportion expenses to reflect the fact that Defendant had substantial justification in objecting to many of Flanagan's discovery requests. One way is to multiply $4680 (the amount Flanagan would receive without apportionment) by 13.5/30 (the number of requests Defendant lacked substantial justification regarding as a percentage of the total number of discovery requests at issue). The Court has utilized this technique before. However, employing this device would mean Flanagan would receive only forty five percent of the fees she seeks. The Court believes this fails to fairly reflect the extremely poor quality of many of Defendant's objections, many of which simply contained

clearly impermissible general objections, as noted throughout this opinion. Even when Defendant did make a specific objection, it was usually lacking in any meaningful detail.

Under the authority of the substantial discretion afforded by the discovery rules, the Court has determined a different amount of apportionment is appropriate. Fed. R. Civ. P. 37(a)(4)(C); Coleman, 175 F.R.D. at 182. As noted above, the Flanagan's underlying motion to compel was granted regarding 21.5 of 30 requests, but Defendant only lacked substantial justification regarding 13.5 of 30. The Court has concluded the best way to account for the fact that Defendant had substantial justification for some requests where the underlying motion to compel was granted while simultaneously accounting for the very poor quality of many of Defendant's objections is to take the mid-point between 21.5/30 and 13.5/30, which is 17.5/30, and multiply this number by $4680. This results in a fee of $2730.

Flanagan's Motion for Attorney Fees is therefore GRANTED IN PART and DENIED IN PART. Thomas Ullrich, Ellis Bennett, and Wharton Aldhizer & Weaver, P.L.C. shall be responsible for paying $2730 to Flanagan within **thirty days** from the date of this Order. Filing objections does not stay this Order.

V.

### The Determination of Whether Plaintiffs Are Entitled to Sanctions

The Court now proceeds to consider whether to impose sanctions against Defendant for its conduct in this matter. The Court finds the fees and costs imposed above will already impose a significant cost on defense counsel. They should be a sufficient deterrent to further discovery abuses. Furthermore, the detailed discussion of law contained within this opinion should put counsel on notice of the law the Court expects it to follow. The Court believes that after going

through the proceedings leading to these fees and suffering the reasonable expenses imposed above, counsel is likely to comply with the law. Therefore, further sanctions are DENIED.

IV.  Defendant's Motion to Reconsider

After the Court issued its December 29, 2006 Order, Defendant filed a Motion to Reconsider. The Court takes this opportunity to rule on that Motion. Most of the law concerning the insufficiency of Defendant's responses has been addressed above. The Court will not cover those topics again. However, the Court takes time to note three things. Nothing in this analysis alters the Court's findings regarding reasonable expenses and sanctions.

First, Defendant urged the Court to reconsider its Order to the extent it held Defendant waived the attorney client privilege and work product protection. Some courts have held blanket assertions of privilege without the information required by the Rules result in waiver. See, e.g., United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., 235 F.R.D. 521, 523 (D.D.C. 2006); Atteberry v. Longmont United Hosp., 221 F.R.D. 644, 648-49 (D. Colo. 2004). Other courts provide special protection to claims of privilege. See, e.g., United States v. Phillip Morris, Inc., 347 F.3d 951, 954 (D.C. Cir. 2003); Burlington N. & Santa Fe Ry. v. United States Dist. Court, 408 F.3d 1142, 1149 (9th Cir. 2005). This Court agrees with those courts holding patently insufficiently assertions of privilege result in waiver. If a party is free to disregard, or even claim ignorance of the Rules, there is no reason to have the Rules. The rule of law either is, or is not, the rule of law. Failure to require adherence leads to the rule of the particular judge. As noted above, Defendant's assertions of privilege were plainly insufficient. Therefore, Defendant waived any attorney client privilege or work product protection it had.

Second, Defendant argued the Court's Order expanded the scope of Flanagan's requests

49

for production 16, 17, and 23. This appears to be correct. To the extent the Court's previous opinion granted Flanagan access to material not sought, it was in error.

Third, Defendant argued Flanagan exceeded the 25 interrogatory limit set out in Federal Rule 33. Defendant did not raise this objection in its responses to the interrogatories and therefore waived it. Fed. R. Civ. P. 33(b)(4).

For these reasons and the reasons detailed in the above opinion, Defendant's Motion to Reconsider is GRANTED IN PART and DENIED IN PART. It is granted to the extent that the Court's previous opinion erred in expanding the scope of Flanagan's requests for production 16, 17, and 23. It is otherwise denied.

### V. Decision

Plaintiffs' motions for attorney fees and costs both GRANTED IN PART and DENIED IN PART. Twigg is granted reasonable expenses in the amount of $2666.67. Flanagan is granted reasonable expenses in the amount of $2730. Additional sanctions are DENIED. Thomas Ullrich, Ellis Bennett, and Wharton, Aldhizer & Weaver shall be responsible for paying the above amounts to Plaintiffs within thirty days from the date of this Order. Defendant's Motion to Reconsider is GRANTED IN PART and DENIED IN PART. It is granted to the extent that the Court's previous opinion erred in expanding the scope of Flanagan's requests for production 16, 17, and 23. It is otherwise denied. Filing objections does not stay this Order.

Any party may, within ten (10) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is  made, and the basis for such objection. A copy of such objections should also be submitted to the district court judge of record. Failure to timely file objections to the Order set

forth above will result in waiver of the right to appeal from a judgment of this Court based upon

such Order.  Filing of objections does not stay this Order.


DATED: February 28, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE